THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
PEGGY AUSTIN, Defendant-Appellant.

First District (3rd Division)   No. 85—2583

Opinion filed May 18, 1988.

James J. Doherty, Public Defender, of Chicago (Debra A. Zisook, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., James E. Fitzgerald, and Colleen A. Hyland, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant, Peggy Austin, was found guilty of murder and sentenced to 30 years in prison. Defendant contends that she is entitled to a new trial because the trial court improperly refused to instruct the jury on the lesser offense of voluntary manslaughter based on sudden and intense passion resulting from serious provocation. We agree and therefore reverse the conviction and remand this case for a new trial.

The victim, Helen Richard, was a CTA bus driver. On February 13, 1984, at about 7 p.m., Richard stopped her bus to pick up passengers at 74th Street and Ashland Avenue in Chicago. Defendant and four other persons boarded the bus. Defendant set a canvas bag on a bus seat, dropped a 40-cent token in the fare box and showed a student bus card pass to Richard. Defendant was told that she could not use the student bus card pass because it was a holiday. Defendant said that she was only going a short distance, and asked if she could stay on the bus. Richard said that it would be unfair to the other people who paid full fare if defendant were permitted to stay on the bus. Defendant then dropped 40 cents into the fare box, but she was told that was not enough. Defendant did not have any more money, and

she asked for a transfer. Richard responded, "No, just get the hell off the bus."

Defendant attempted to reach for a transfer, and Richard hit defendant's hand with a CTA transfer punch. Defendant then slapped Richard. Richard retaliated by hitting defendant on the forehead with the transfer punch. The two women then stood "toe to toe" punching each other for about 30 to 40 seconds. Witnesses described it as a brawl and a fairly even battle, with many blows being struck by both sides. At some point in the fight, Richard was winning and "whaling" on defendant. Defendant then pulled a gun from her back waistband. Richard grabbed or slapped defendant's wrist and a shot was fired into the floor of the bus. As their struggle carried the women off the bus, a second shot was fired, killing Richard. Defendant testified that she did not pull the hammer back with her thumb and she did not recall pulling the trigger. Defendant did not know what happened with respect to the shot being fired. The entire fight lasted about two to three minutes.

Defendant, age 22, testified in her own defense. During the 3½ years prior to the occurrence, she attended the University of Illinois at Chicago. On the day of the occurrence, defendant left her home to get financial aid forms from the University of Illinois. She then visited with her cousin until about 7 p.m., and walked to 74th and Ashland to board a CTA bus. Defendant testified that she carried a weapon as the result of several incidents which happened to her in her neighborhood. According to defendant, she had a gun with her on the day of the occurrence because she was carrying a large radio and was traveling through a high crime area. Defendant did not have any prior convictions.

■ Defendant argues that the trial court erred in refusing her tendered jury instruction of voluntary manslaughter based on serious provocation. (Illinois Pattern Jury Instructions, Criminal, No. 7.03 (2d ed. 1981) (hereinafter IPI Criminal 2d).) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he or she is acting under a sudden and intense passion resulting from serious provocation by the individual killed. Serious provocation is conduct sufficient to excite an intense passion in a reasonable person. Ill. Rev. Stat. 1985, ch. 38, par. 9—2(a).

Mutual combat is recognized as serious provocation sufficient to warrant an instruction to the jury on voluntary manslaughter based on serious provocation. (*People v. Leonard* (1980), 83 Ill. 2d 411, 420-21, 415 N.E.2d 358, 363; *People v. Miller* (1981), 96 Ill. App. 3d 212, 214, 421 N.E.2d 406, 408-09.) In refusing to give the pertinent jury

instruction in this case, the trial court stated that there was no evidence of a mutual combat situation.

Mutual combat has been defined as that into which both parties enter willingly, or in which two persons, upon a sudden quarrel and in hot blood, fight upon equal terms. (*Miller,* 96 Ill. App. 3d at 215, 421 N.E.2d at 409.) In the present case, defendant and Richard were of similar size, although Richard was slightly taller and heavier. Defendant sustained soft tissue injuries to her face, forehead and right hand as a result of the fight. While it is true that one who initiates the combat cannot rely on the dispute to mitigate the offense from murder to manslaughter, here the evidence as to who was the aggressor was in dispute. Moreover, the evidence in this case is sufficient to conclude that the parties became suddenly heated and engaged in mutual combat on equal terms and the death resulted from the combat. (See *Miller,* 96 Ill. App. 3d at 215, 421 N.E.2d at 409.) If the elements that are necessary to constitute voluntary manslaughter arise in the heat of the struggle, the defendant may be found guilty of manslaughter rather than murder. *Leonard,* 83 Ill. 2d at 422, 415 N.E.2d at 363; *People v. Craven* (1973), 54 Ill. 2d 419, 425, 299 N.E.2d 1, 5.

In *Craven,* there was evidence presented by the State that defendant, clearly the aggressor, assaulted the decedent and a struggle followed. In the course of the struggle and preceding the homicide, defendant suffered a laceration on the arm. On the basis of these facts, the court stated: " 'Testimony by the State's own witnesses, if credited by the jury, could have led to a conclusion of mutual combat between defendant and the deceased.' " (*Leonard,* 83 Ill. 2d at 422, 415 N.E.2d at 364, quoting *Craven,* 54 Ill. 2d at 425, 299 N.E.2d at 5.) We believe that there is evidence of mutual combat in the present case and that the State's argument concerning the adequacy of provocation should therefore have been addressed by the jury.

The State maintains that even if there was sufficient evidence to establish voluntary manslaughter resulting from serious provocation, the trial court properly refused the pertinent instruction because defendant had also urged self-defense and because the trial court instructed the jury on voluntary manslaughter based on belief in justification. (See IPI Criminal 2d No. 7.05.) We find no merit to the State's contention. Plainly, a defendant may pursue different and inconsistent theories in her defense. If there is sufficient evidence adduced as to alternative or inconsistent defenses, it is up to the jury to determine which, if any, of the defenses is credible. However, the jury must be properly instructed as to the law applicable to each of the defenses

for which evidence was adduced at trial.

Defendant has raised other errors which she claims would entitle her to a new trial or a new sentencing hearing. However, in view of our conclusion that defendant is entitled to a new trial for the reasons that we have stated, we need not decide the other trial issues and sentencing issue raised by defendant. These issues may not arise at the new trial since they are dependent upon the evidence that is developed at such a trial.

■ Defendant also contends that she was not proven guilty beyond a reasonable doubt. We believe that the evidence at trial was sufficient for the jury to conclude that defendant was guilty beyond a reasonable doubt. This does not mean that we are making a finding as to defendant's guilt or innocence which would be binding on retrial, but, rather, our consideration of the sufficiency of the evidence admitted at trial will remove the risk of subjecting defendant to double jeopardy. See *People v. Taylor* (1979), 76 Ill. 2d 289, 309-10, 391 N.E.2d 366, 375.

Accordingly, the judgment of conviction is reversed, and the case is remanded for a new trial.

Reversed and remanded.

WHITE, P.J., and FREEMAN, J., concur.